IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DESERT COMMUNICATIONS, INC. | § | Case No. 14-30152 |
| | § | Chapter 11 |
| Debtor. | § | |

EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I)
AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO
SECTIONS 105, 361,362, 363 AND 364 OF THE BANKRUPTCY CODE AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND
(II) GRANTING ADEQUATE PROTECTION TO THE
PRE-PETITION SECURED LENDERS

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW DESERT COMMUNICATIONS, INC. (the "Debtor"), debtor and debtor-in-possession, and hereby submits this motion (the "Motion") pursuant to Sections 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule" or "Bankruptcy Rules"), seeking an order from the Court (i) authorizing the use of cash collateral pursuant to sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); and (ii) granting adequate protection to the pre-petition secured lenders. In support of this Motion, the Debtor respectfully represents as follows:

## I.  JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

#411999                              Page 1

2.    The statutory basis for relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, and Bankruptcy Rule 4001(b).

## II.  BACKGROUND

3.    On January 31, 2014 (the "Petition Date"), Debtor filed for bankruptcy protection under Chapter 11 of Title 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business and manage its property as a debtor in possession.

4.    Debtor is provider of communications systems to businesses, schools and government.Representative non-business clients include El Paso ISD, Socorro ISD, Ysleta, ISD, Dallas, ISD and Fort Worth, ISD.

5.    The Debtor has its principal office in EL Paso, Texas.  There is a four (4) person satellite office in Dallas, Texas.

**First Franchise Capital Corporation Loan**

6.    As of the Petition Date, BOL Opportunity Fund I, LLC (hereinafter "BOL") and the Debtor were parties to an Asset Purchase Agreement, Master Service Agreement and Deposit Control Agreement dated December 30, 2009.  These are referred to as the Pre-Petition Indebtedness Documents..

7.    As of the Petition Date, the balance of the Debtor's indebtedness to BOL, according to the BOL, is approximately 10,000,000.00 in principal, accrued and outstanding interest, and other charges under the 2009 Pre-Petition Indebtedness Documents (the "Pre-Petition Indebtedness").

## III. THE PRE-PETITION INDEBTEDNESS DOCUMENTS

8.    BOL asserts that the Pre-Petition Indebtedness is valid, existing, and legally enforceable, and is evidenced and secured by the Pre-Petition Indebtedness Documents executed and delivered by the Debtor and third parties to BOL in December 2009.

9.    BOL asserts that the Pre-Petition Indebtedness evidenced by the Pre-Petition Indebtedness Documents in favor of the BOL are secured by perfected first priority liens and security interests in substantially all of the Debtor's property, wherever located, including, without limitation, inventory, equipment, cash and accounts receivable. The inventory, equipment and accounts receivable and any other property of the estate in which BOL has or asserts an interest in as of the Petition Date are collectively referred to as the "Pre-Petition Collateral."

10.   BOL believes that it has properly perfected its liens and security interests in the Pre-Petition Collateral as evidenced by the Pre-Petition Collateral Documents, by documents held in possession of BOL, and documents filed with the appropriate state and county filing offices.

11.   Under the terms and provisions of the Pre-Petition Indebtedness Documents, the Debtor is in default of its obligations to BOL. These defaults exist, have not been timely cured, and are continuing. The Pre-Petition Indebtedness remains fully due and owing.

12.   BOL asserts that it holds enforceable, perfected, first priority liens and security interests in the Pre-Petition Collateral and Cash Collateral (as defined herein), as more particularly set forth in such documents, and as provided under 11 U.S.C. § 522(b), this Cash Collateral Order and applicable law in the amount of the Pre-Petition Indebtedness.

13.   11 U.S.C. § 363(c)(2) states as follows:

The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection

#411999                              Page 3

unless:

>  (A) each entity that has an interest in such cash collateral consents;
>
> or
>  (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

14. Cash collateral, in turn, is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

## IV. REQUEST FOR USE OF CASH COLLATERAL

15. The Debtor requires the use of cash to pay the reasonable and necessary operating expenses, including, but not limited to, salaries and payroll, purchase equipment and supplies, routine repair and maintenance expenses, taxes, and insurance, to minimally, preserve, and optimally, and the Debtor for the benefit of all creditors, including the BOL.

### A. GROUNDS FOR RELIEF REQUESTED

16. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those having an interest in such cash collateral consent or the court authorizes the use. See 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as is necessary to adequately protect any interest in cash collateral. See 11 U.S.C. §363(e). The burden, however, to demonstrate that the cash constitutes cash collateral belongs to the party claiming an interest in that cash and is not the Debtor's burden to prove the contrary. See 11 U.S.C. § 363(o)(2).

17. A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. See *In re Harrington and Richardson, Inc.*, 48

B.R. 431, 433 (Bankr. D. Mass. 1985); *In re Certified Corp.*, 51 B.R. 768, 770 (Bankr. D. Hawaii 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection."). Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." See 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as here, continuing the business as a going concern will cause the generation of inventory and future revenues upon which the secured lender is granted replacement liens. See, e.g., *In re Neise, Inc.*, 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr.D. Hawaii 1985); *In re Post-Tron Systems, Inc.*, 106 B.R. 345 (Bankr.D.R.I. 1989).

18.     By authorizing the Debtor to use Cash Collateral, the Court will place the Debtor in a position to fund its operating expenses, and to operate as a going concern for the immediate future. The Debtor needs to use Cash Collateral, inter alia, to fund payroll, satisfy employee obligations, pay suppliers and other vendors, and meet other on-going business obligations. Without the authority to use Cash Collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate as a going concern, all to the detriment of all of Debtor's creditors, including the Lenders.

19.     Should the Debtor not be allowed to use Cash Collateral to fund its day-to-day operations, not only would the Debtor, its employees and its customers be damaged, but also BOL and the other creditors of the Debtor, including the pool of unsecured creditors. A denial of the

use of Cash Collateral would cause immediate and irreparable harm to the reputation, goodwill, and public confidence in the Debtor, a consequence that can only translate into a drastic loss in value as a going concern in a highly competitive business.

**B.  OFFER OF ADEQUATE PROTECTION**

20.  The offer of adequate protection, is as follows:

a)  BOL will be granted  replacement liens in cash, subject to a determination by the Court that BOL hold a fully perfected, enforceable pre-petition lien on cash, with the exceptions and provisions that follow, with the same priority as the BOL's individual pre-petition liens, if any, and to the extent that the value of BOL's collateral, on an aggregate basis, diminishes as a result of the use of Cash Collateral authorized by this Court;

b)  The replacement liens will not prime any validly attached and properly perfected lien held by a third party on specific property of the Debtor as of January 31, 2014, the Petition Date;

c)  The replacement lien will not attach to chapter 5 actions of the Debtor or the proceeds of the recovery upon such actions;

d)  Except for post-petition cash generated from operations, the replacement lien will not attach to any unencumbered property of the Debtor, if any, or the proceeds of any sale of any unencumbered property, and the proceeds from any sale of any unencumbered property shall be deposited into a separate unencumbered account and, absent further order of the Court, shall not be subject to the replacement lien of BOL;

e)  The replacement lien will attach only to the extent that cash used by the Debtor is

ultimately determined by the Court to be Cash Collateral of BOL;

f)   The replacement lien will not apply to any reduction in cash value caused from the payment of an expense that is later surcharged against BOL's collateral based on Section 506(c) of the Bankruptcy Code;

g)   The cash will be used to continue the operations of the Debtor and therefore maintain the going concern value of the aggregate of the BOL's collateral; as such, the use of cash will be regulated by a pre-approved budget to assure that appropriate operating expenses are being paid and that no inappropriate expense is paid;

h)   The cash will be used in part to maintain insurance on the Debtor's collateral and all other of the Debtor's assets;

i)   The Debtor will provide to BOL monthly cash flow reports, monthly operating reports, and monthly financial statements and schedules. These reports will allow BOL to vigilantly monitor their collateral position and seek relief should it become necessary; and

j)   The use of Cash Collateral may be terminated by the Court on motion, after notice and hearing, if the Court determines that BOL is no longer adequately protected.

21.   The Debtor believes that the terms of the Interim Cash Collateral Order are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of BOL's cash collateral will not diminish as a result of the use of cash in this case.

22.   The Debtor proposes to pay BOL, monthly payments of $25,000.00 or such lower sum as may otherwise be agreed to between the Debtor and BOL..

23.   The Debtor believes that BOL is entitled to the protections set forth in the proposed Interim

#411999                            Page 7

Cash Collateral Order. The adequate protection provisions have been drafted to provide protection without taking undue or inappropriate value from the Estate and its unsecured creditors.

24.    Given that the interests of BOL will be adequately protected, it is in the best interest of the Debtor, its Estate, and all of its creditors for the Debtor to be able to continue operations and that the Debtor be authorized to use Cash Collateral, even without BOL's consent.

## V.  REQUEST FOR RELIEF

25.    Debtor respectfully asks that the Court enter an order determining 11 U.S.C. § 363(c)(2) to be inapplicable.

26.    In the alternative, the Debtor respectfully asks that it be authorized to use Cash Collateral for the purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy Code, and that the Court grant BOL a replacement lien on post-petition assets, as allowed by Sections 361, 363 and/or 364 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion. The Debtor requests that this relief be granted on both an interim and final basis. Relief is necessary on an interim basis to avoid immediate and irreparable harm to the Debtor, its Estate, and all of its creditors, as previously asserted. At the preliminary hearing, the Debtor requests that the Court authorize use of Cash Collateral through the final hearing scheduled on the Motion, and that the Court schedule a final hearing. At the final hearing, the Debtor asks that the Court authorize it to use Cash Collateral on a go-forward basis through the life of this case, subject to such use being terminated by further order of this Court upon a finding that BOL are no longer adequately protected.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court (i) authorize the use of Cash Collateral pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to BOL; and (iii) grant such other relief and further relief as the Court may deem proper.    The Debtor's form proposed Order for entry on this Objection is attached as Exhibit "A".

Respectfully submitted,

**JAMES & HAUGLAND, P.C.**
609 Montana Ave.
El Paso, Texas 79902
Telephone: 915-532-3911
Facsimile: 915-541-6440

By:  ___/s/ Wiley F. James, III_____
         WILEY F. JAMES, III
         State Bar No. 10554300

PROPOSED ATTORNEY FOR THE DEBTOR

## CERTIFICATE OF SERVICE

I certify that on the _21_ day of January, 2014 a true and correct copy of the foregoing was served upon the following parties via electronic means as listed on the Court's ECF Noticing System:

U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

and to all Creditors and Parties in Interest listed on the attached Creditors Matrix.

WILEY F. JAMES III

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

IN RE:                                      §
                                            §
DESERT COMMUNICATIONS, INC.                 §          Case No.  14-30152
                                            §          Chapter 11
        Debtor.                             §

## ORDER GRANTING EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDERS

On January 31, 2014, the Court considered the Debtor's Emergency Motion for Use of Cash

Collateral [Docket No. 6] (the "Motion") filed by Desert Communications, Inc. (the "Debtor").

Based upon the record herein, due deliberation thereon, good and sufficient cause existing, the Court

hereby finds and concludes as follows:

#411999



EXHIBIT
A

## SUBSEQUENT HEARING

A subsequent hearing on the Motion shall be held on _____, 2014, Mountain Time, before the Honorable H. Christopher Mott, United States Bankruptcy Judge, at the United States Bankruptcy Court, 511 E. San Antonio, Room 444, Texas 79901. Any party that has an objection to the Debtor's use of cash collateral shall file an objection on or before the Hearing date.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

A.    The Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Title 11 of the United States Bankruptcy Code ("the Bankruptcy Code") on January 31, 2014 (the "Petition Date"). Since the Petition Date, the Debtor has continued to operate its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

*Cash Collateral*

B.    As used herein, "Cash Collateral" shall mean all cash, cash equivalents, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest, including the BOL's collateral as provided in , whether existing before or after the commencement of the Bankruptcy Case.

C.    BOL does consent to the Debtors' use of conditions contained in this Interim Order. The Debtors have requested that they be entitled to use for the purposes set forth in the budget attached hereto as *Exhibit .1* (the *"Budget "*) and such other purposes as required by this Interim Order.

D.   Without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets and pay operating expenses, overhead, costs to administer the Debtors' estate, and other expenses necessary to maximize the value of the Debtors' assets. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein, The use of Cash Collateral will benefit the Debtors and the bankruptcy estate, The ability of the Debtors to maximize the value of their assets depends upon the Debtors' ability to use Cash Collateral. Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving the bankruptcy estate.

E.   The Debtors have requested that BOL permit the use of Cash Collateral to be used solely for such purposes set forth in the Budget.

F.   Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.

G.   Pursuant to Bankruptcy Code § 363(c)(2) and (e), the relief requested in the Motion is hereby **APPROVED AND GRANTED** as described herein.

## ORDER

*Authorization for Use of Cash Collateral*

1.   The Debtors shall segregate and account to BOL for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession. The Debtors shall account to BOL. for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Interim Order. Absent a further Order of this Court or the consent of BOL, the Debtors are strictly prohibited from using the

Cash Collateral except as expressly provided for herein.

2.      The Debtors are hereby authorized to use Cash Collateral only in strict accordance with the terms and conditions provided in this Interim Order (including the Budget). Furthermore, the Debtors are authorized and hereby agree to perform any and all acts reasonably required by BOL to comply with the terms and conditions of this Interim Order.

### *Cash Collateral Accounts*

3.      The bank accounts of the Debtors (collectively, the *"Cash Collateral Accounts "*) shall be in the name of the Debtors, but by virtue of this Order, BOL shall have valid and perfected liens against the Cash Collateral Accounts to secure its interest in the Cash Collateral and no further actions are required by BOL to perfect such liens.

4.      As adequate protection of BOL's liens on and security interests in its collateral (the *"Collateral "*) and for the Debtors' use of Cash Collateral and only so long as an Event of Default (as defined in paragraph 18 below) shall not have occurred, the Debtors are authorized to and shall use the Cash Collateral strictly in accordance with the Budget.

5.      BOL consents to the use of Cash Collateral only for amounts actually incurred in accordance with the Budget. Upon the occurrence of an Event of Default, BOL's consent to the use of Cash Collateral shall automatically and immediately terminate and any consent to use of Cash Collateral to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn.

6.      The Debtors and BOL may modify or extend the Budget, without further notice to creditors or Order of this Court, provided that a stipulation signed by counsel to the Debtors and BOL is filed together with a copy of a Budget. The stipulation shall become effective three

business days after notice of the stipulation has been served on all parties on the Debtors' service list.

7.      As further adequate protection, Desert Communications, Inc. shall not make any payments to any person, except as are necessary to satisfy its operating expenses..

*Replacement Liens*

8.      As adequate protection of the BOL's interest in the Collateral and for the Debtors' use of Cash Collateral, BOL is hereby granted, effective as of the Petition Date, valid and automatically perfected replacement liens and security interests in and upon (a) the Collateral to the extent of any diminution in the value of BOL interest in such Collateral; (b) all property acquired by the Debtors after the Petition Date that is of the exact nature, kind or character of the Collateral; and (c) all cash and receivables that are proceeds, products, offspring, or profits of such Collateral. The liens granted in this Interim Order shall not extend to chapter 5 causes of action.

*Automatic Perfection*

9.      This Interim Order shall be sufficient and conclusive evidence of the perfection, attachment, and validity of all of the BOL's security interests in and liens on the Collateral and the liens and security interests granted and created by this Interim Order, constitute valid, automatically perfected and unavoidable security interests, with the priorities granted hereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect (a) the security interests and liens granted to BOL by this Interim Order; or (b) the adequate protection and

replacement liens and security interests granted herein to BOL.

10. To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of BOL's liens and security interests authorized, ratified, or created by this Interim Order or otherwise would impose filing or registration requirements with respect to such liens, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the Court.

*Automatic Stay*

11. The automatic stay is hereby vacated and modified to the extent necessary to permit the Debtors and BOL to (a) commit all acts, actions, and transfers necessary to implement this Interim Order; (b) commit all acts and actions contemplated herein; and (c) pursue the BOL's rights and remedies as to the Collateral in accordance with this Interim Order.

Collateral Insurance, Maintenance, Taxes, and Deposits

12. The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Collateral, and in accordance with the BOL's loan documents (covering such risks in amounts as shall be satisfactory to BOL and shall name BOL as loss payee thereunder).

13. Upon receipt of notification (written or oral) that an insurance policy issued prior to the Petition Date covering any Collateral will not be renewed by the respective carrier, the Debtors will immediately notify BOL in writing of such occurrence and thereafter provide BOL with the status of all negotiations, if any, regarding such policy on a weekly basis.

14. To the extent permitted by the Budget, the Debtors shall make any and all payments

#411999                                   Page 16

necessary to keep the Collateral and its other property in good repair and condition and not permit or commit any waste thereof. The Debtors shall exercise their business judgment and, in so doing shall preserve, maintain, and continue all material patents, licenses, privileges, franchises, certificates and the like necessary for the operation of its business.

### Reporting Requirements

15.     The Debtors are directed to provide to BOL (a) financial or other information concerning the Debtors' acts, conduct, property, assets, liabilities, operations, financial condition, and transactions, or concerning any matter that may affect the administration of the bankruptcy estate, as BOL may from time to time reasonably request; (b) on or before the tenth day of each month, reports of receipts and cash usage for the prior month in a form agreeable to BOL in its sole and absolute discretion; (c) copies of all reports provided to the Office of the United States Trustee within two days after such reports are provided.

16.     Subject to all applicable privileges and reasonable notice, BOL and its agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable BOL or its agents and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral; The Debtors shall fully cooperate with BOL regarding such reviews, evaluations, and inspections, and shall make its employees and professionals available to BOL and its professionals and consultants to conduct such reviews, evaluations, and inspections.

### Events of Default

17.     The occurrence of any of the following shall constitute an Event of Default under this Interim Order: (a) the occurrence of the Expiration Date (as defined in paragraph 28 below),

termination, expiration, or non-renewal of this Interim Order; (b) any default, violation, or breach of any of the terms of the Interim Order or the final Order by the Debtor; (c) conversion of the Bankruptcy Case to a bankruptcy case under chapter 7 or the dismissal of the Bankruptcy Case; (d) the appointment of a trustee, a responsible person, or an examiner with expanded powers relating to the operation of the business of the Debtors without the consent of BOL; (e) the entry of an Order terminating the Debtors' use of Cash Collateral; and (f) any other security interest, lien, claim, or encumbrance shall be granted in any of the Collateral which is *part passu* with or senior to the claims of BOL. Any of the foregoing events of shall be referred to individually as an *"Event of Default"* or collectively as *"Events of Default "*.

### Remedies

18.  Upon the occurrence and continuation of any Event of Default, BOL may terminate the Debtors' authority to use Cash Collateral (if it has not automatically terminated pursuant to this Interim Order) or take any and all actions and exercise any other right or remedy permitted under this Interim Order or applicable law, all without further application or Order of the Court, provided that (a) BOL shall not be obligated to take title to any of the Collateral in the pursuit of BOL's rights and remedies; and (b)BOL shall file a written notice with the Court and provide the Debtors and the United States Trustee with three business days' written notice before taking such action.

### Other Terms

19.  The terms and provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any Order that may be entered converting to chapter 7 or dismissing the

Bankruptcy Case, except for the Debtors' authority to use Cash Collateral (which shall immediately terminate upon entry of such an Order).

20. The provisions of this Interim Order shall inure to the benefit of the Debtors and BOL, and it shall be binding upon (a) the Debtors and their successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtors or with respect to property of the estate of the Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case; and (b) all creditors of the Debtors and other parties in interest.

21. If any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed without the prior, written consent of BOL, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to BOL before the effective date of such modification, vacation, or stay; or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, created, or confirmed hereby. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to BOL before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Interim Order, and BOL shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

22. No approval, agreement, or consent requested of BOL by the Debtors pursuant to the terms of this Interim Order or otherwise shall be inferred from any action, inaction, or acquiescence of BOL other than a writing acceptable to BOL that is signed by BOL and expressly shows

such approval, agreement or consent, without limitation.

23. Nothing herein shall be deemed or construed to waive, limit, or modify the rights of BOL to obtain further adequate protection and other statutory protections for the use of the Collateral and Cash Collateral, or to seek other relief in the Bankruptcy Case in accordance with any provision of the Bankruptcy Code or applicable law, and all of the Debtors' rights to contest any such requests are preserved.

24. This Court hereby expressly retains jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all disputes in connection therewith.

25. All headings in this Interim Order are descriptive and for reference only, and do not have separate meaning or change any terms therein. of the Debtor; and (0 all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules of the Northern District of Texas.

*Notice*

26. The Debtor' proposed counsel shall serve this Interim Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for BOL; (c) all creditors known to Debtors who have or may assert liens against any Debtors' assets; the United States Internal Revenue Service; (e) the twenty largest unsecured creditors of the Debtor; and (f) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules of the Western District of Texas.

*Expiration Date*

27. The BOL's consent, and Debtors' authority, to use Cash Collateral subject to the funding and

Budget limitations above, shall be effective upon entry of this Interim Order to and including the earlier of: (a) notice of the occurrence of an Event of Default; or (b) _____, 2012, at 5:00 p.m., prevailing Central time, at which time all of the Debtor' authority to use Cash Collateral shall terminate, unless extended by written agreement of the parties hereto, a copy of which shall be promptly filed with this Court by the Debtors (the *"Expiration Date")*.

**IT IS SO ORDERED.**

# # #

Submitted by:

Wiley F. James, III
James & Haugland, P.C.
609 Montana Ave.
El Paso, TX 79902

Debtor(s) 14-30152 Maximilian Grace #6  Filed 01/31/14  Entered 01/31/14 19:56:09  Main Document  Pg 22 of  WESTERN DISTRICT OF TEXAS

Chapter:  11  23  EL PASO DIVISION

American Express
PO Box 360001
Ft. Lauderdale, FL  33336-0001

Communications Supply Corporation
200 East Lies Rd.
Carol Stream, IL  60188

Ingram Micro
1600 E. St. Andrews Pl.
Santa Ana, CA


Ascendient Opportunity Fund 1, LLC
18881 Von Karman Ave.
Suite 1600
Irvine, CA  92612

Cullers Investments Family, LTD
7170 Westwind, Suite 101
El Paso, TX  79912

Internal Revenue Service
P. O. Box 21126
Philadelphia, PA  19114


Ascendient Securities, LLC
18881 Von Karman Ave.
Suite 1600
Irvine, CA  92612

D.M. Dickason
4900 North Mesa
El Paso, TX  79912

Joseph Griffith
Greenberg Trauig, LLP
2200 Ross Ave., Suite 5200
Dallas, TX  75201


Bank of America
55 South Lake Ave.
Suite 900
Pasadena. CA  91101

Derek Montgomery
Kelly Hart & Hallman, LLP
201 Main St., Suite 2500
Fort Worth, TX  76102

Kneafsey & Friend
800 Wilshire Blvd.
Suite 710
Los Angeles, CA  90017


Bell Nunnally
3232 McKinney Ave.
Suite 1400
Dallas, TX  75204

EL Paso Tax Assessor and Collector
221 N. Kansas
El Paso, TX  79901

Marlin Business Bank
Po Box 637
Mount Laurel, NJ  08054


Blue Cross/Blue Shield of Texas
1001 E. Lookout Dr.
Richardson, TX  75082

Global Technology Finance
4041 MacArthur Blvd.
Suite 260
Newport Beach, CA  92660

Marshall M. Searcy, Jr.
Kelly Hart & Hallman, LLP
201 Main St., Suite 2500
Fort Worth, TX  76102


BOL Opportunity Fund I
110 Park Ave.
Greenwich, CT  06830

Graybar
11885 Lackland Rd.
St. Louis, MO  63146

Mimio
One Charles park
Cambridge, MA  02142


Brian Calhoun
Calhoun Pilgrim, LLP
325 N. Saint Paul St.
Suite 3950
Dallas, TX  75201

Hewlett Packard
3000 Hanover St.
Palo Alto, CA  94304

New England Technology Finance,
4041 MacArthur Blvd.
Suite 260
Newport Beach, CA  92660


Brian K. Garrett
Kelly Hart & Hallman, LLP
201 Main St., Suite 2500
Fort Worth, TX  76102

HUB International
201 E. Main St.
El Paso, TX  79901

Newell Rubbermaid Sanford
75 Remittance Dr.
Suite 1167
Chicago, IL  60675-1167


Charles Mosley
7100 Westwind
Suite 300
El Paso, TX  79912

IBM Credit, LLC
1 North Castle Dr.
Armonk, NY  10504

Regus Management Group, LLC
222 W. Colinas Blvd.
Suite 1650-E
Irving, TX  75039

Revalation Technology
31461 Rancho Viejo Rd.
A4-Auite 102
San Juan Capistrano, CA  92675


Southwet Networks, Inc.
1111 W. North Carrier Parkway
Suite 400
Grand Prairie, TX  75050


Streamline Water
PO Box 972832
El Paso, TX  79997


Tech Data
5350 Tech Data Dr.
A3-20
Clearwater, FL  33760


The Mirazon Group
1640 Lyndon Farm Court
Suite 102
Louisville, KY  40223


TIme Warner Cable
7010 Airport Rd.
El Paso, TX  79906-4943


Travelers
2505 E. Missouri
El Paso, TX  79903


Valero Fleet Services
PO Box 696000
San Antonio, TX    78269-6000


Xiotech
9950 Federal Dr.
Suite 100
Colorado Springs, CO  80921